IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TIMOTHY MILTON BOONE #337704 | * | |
| Plaintiff, | | |
| vs. | * | CIVIL ACTION NO. CCB-09-3335 |
| WARDEN J. PHILLIP MORGAN | * | |
| Defendant. | | |
| | *** | |

**MEMORANDUM**

**Background**

Plaintiff Timothy Milton Boone ("Boone"), an inmate confined at the Western Correctional Institution ("WCI"), originally filed a "motion for assistance and judicial review" with the court complaining that Warden Morgan was dismissing his administrative remedies or "informal complaints" without proper investigation and was conspiring to allow WCI staff to "use racial profiling within [sic] threaten tactics" towards him for no reason other than his exercise of his administrative remedy rights against WCI officials. ECF No. 1. The motion was construed as a 42 U.S.C. § 1983 civil rights action.

In his court-ordered supplemental complaint seeking damages, Boone complained that the Warden failed to respond to his informal complaint regarding the taking of his kufi[1] and the violation of his First Amendment right to freely exercise his religion. ECF No. 4. He alleged that while on WCI disciplinary segregation his religious items—his kufis and cloth prayer rug—were taken and destroyed and he was told by the chaplain that the only religious item he could have on

---

[1] A kufi is a brimless head covering sometimes worn by Muslim men during religious prayer. *See* Declaration of Imam Ismael Abdulmalek, ECF No. 24, Ex. D ("Abdulmalek Decl."), ¶3.

1

"lockup" was a soft-bound version of the Holy Qur'an. *Id.* He claimed that the WCI policy for allowable property on disciplinary segregation was unreasonable,[2] rigid, and violated his right to practice his religion.[3]

Defendant filed an unopposed motion to dismiss or, in the alternative, motion for summary judgment addressing the allegations raised in plaintiff's initial filing but failing to address the claims raised in the supplemental complaint. ECF No. 17. The motion for summary judgment was granted as to all claims except the plaintiff's First Amendment religious freedom and Fourteenth Amendment property claims. ECF Nos. 22 and 23. Defendant was directed to file an additional responsive pleading. Defendant has filed a motion to dismiss, or, in the alternative, motion for summary judgment as to the remaining claims. ECF No. 24. Plaintiff has responded. ECF No. 26. Oral hearing is not needed. *See* Local Rule 105.6 (D. Md. 2011).

**Standard of Review**

Summary judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an

---

[2] Boone also complained that his television, fan, radio and articles of clothing and footwear were wrongfully destroyed while he was confined on disciplinary segregation in 2007. ECF No. 4 at p. 9.

[3] An attachment to the supplemental complaint shows that Boone successfully grieved part of his remedy regarding the taking of his kufi and prayer rug. ECF No. 4 at Attachment. The Warden was instructed to return or compensate Boone for his headgear and to "facilitate changes" to institutional directives to allow for religious headgear on segregation units. *Id.*

> otherwise properly supported motion for summary judgment; the
> requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *Id.* at 248.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

## **Analysis**

Boone's supplemental complaint raises a First Amendment religious exercise claim (and related claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA)) and a Fourteenth Amendment due process claim regarding the taking of his property.

**Religious Exercise**

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise" of religion, U.S. Const. Amend. I, and is applicable to the states by virtue of the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Inmates retain a right to reasonable opportunities for free exercise of religious beliefs

without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972). A prisoner does not, however, enjoy the full range of freedoms as those not incarcerated. "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987).

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987). "[S]everal factors are relevant in determining the reasonableness of the regulation at issue." *Id.* "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* (citation omitted). "A second factor . . . is whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. "A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id*.

Plaintiff complains that when he was assigned to disciplinary segregation he was not permitted to keep his prayer rug or kufi in violation of his right to freely exercise his religion. Plaintiff filed a grievance which was found meritorious in part in that the Warden at WCI was directed to return the kufi to plaintiff and to amend the policy at WCI to permit the use of religious head coverings by disciplinary segregation inmates. ECF 4 & 24.

The WCI policy for segregation inmates was amended to permit the wearing of non-knit religious head coverings by disciplinary segregation inmates. ECF No. 24, Ex. B. Staff at WCI found that prayer rugs posed a risk to security because they were used to cover up the windows in

4

the cell, could be used as padding under clothing to thwart the necessary use of force by correctional employees, and could be unraveled to use the threads as "fishing lines" to send and receive contraband material between cells. *Id*. Staff also found that knit religious head coverings posed risks to institutional safety as the knit hats could likewise be unraveled and the thread used to send and receive contraband between cells. Therefore, the policy for disciplinary segregation inmates was amended to permit the use of solid material religious head gear. No knit hats are permitted. *Id*. Additionally, Imam Ismael Abulmalek, the Muslim Chaplain for the Maryland Correctional Training Center in Hagerstown, avers that it is not necessary for a Muslim to have a prayer rug in order to pray. Abdulmalek Decl. ¶2. Imam Abdulmalek explains that Islam requires only that a Muslim kneel for prayer on a clean surface. *Id.* A sheet, towel, or clean floor is sufficient to comply with this requirement. *Id.* Imam Abdulmalek further states that while Islam required a man to cover his head during prayer, no particular type of head covering is prescribed and an improvised head covering would be sufficient. *Id*. ¶3.

Correctional employees offered to assist plaintiff in securing a kufi which complied with allowable property, *i.e.*, a non-knit, solid material head covering. Plaintiff declined the offer. ECF No. 26, Attachment at 3. Upon plaintiff's release from disciplinary segregation on May 22, 2009, all confiscated items were returned to him. Declaration of Tennille Winters, ECF No. 24, Ex. A, ¶3; Personal Property Inventory, *id.* at 7.

The temporary deprivation of plaintiff's kufi and prayer rug, items not necessary to the practice of Islam, does not violate plaintiff's constitutional rights. Moreover, it has been demonstrated that the temporary deprivation of these items did not place a substantial burden on plaintiff's ability to practice his faith and that other alternatives were readily available to him.

5

WCI's reasons for limiting access to various religious materials are related to prison security and discipline, and thus pass constitutional muster.

WCI's temporary deprivation of the plaintiff's kufi and prayer rug also satisfied the requirements of RLUIPA because it did not impose a "substantial burden on the religious exercise" of the plaintiff. RLUIPA provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). The term "religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). A prison policy "imposes a substantial burden on religious exercise if it puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, or forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." *Smith v. Ozmint*, 578 F.3d 246, 251 (4th Cir. 2009) (alterations and omissions omitted) (citing *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)). In *Smith*, a prison policy that required close-cropped hair and authorized prison employees to forcibly shave prisoners' heads violated RLUIPA because the policy "compelled [the plaintiff] to modify his behavior in violation of his genuinely held religious beliefs." *Id.* Here, unlike in *Smith*, WCI's decision to temporarily deprive Boone of his knit kufi and prayer rug did not compel him to "modify his behavior in violation of his genuinely held religious beliefs." As stated above and as Imam Abulmalek explained, neither a

6

knit kufi nor a knit prayer rug are required by the Muslim faith. Other materials that were available to Boone would have sufficed. Therefore, the requirements of RLUIPA were satisfied.

In light of the foregoing, plaintiff's claims regarding denial of his religious materials shall be dismissed.

**Property**

To the extent plaintiff alleges he did not receive any of his personal items when he was released from disciplinary segregation, including *inter alia* his knit kufi, prayer rug, television, and radio, his claim fails. In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U. S. 327, 330-31 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy.[4] *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[5] Records do not reflect that plaintiff possessed all of the property he alleges was improperly confiscated, *i.e.*, television, fan, or radio. Additionally, records demonstrate that plaintiff signed off on the property form indicating that all property was returned to him. ECF No. 24, Ex. A, Affidavit and Attachments. As noted above, even if plaintiff's property had been improperly destroyed, such a claim does not rise to a constitutional violation.

## Conclusion

For the aforementioned reasons, defendant's dispositive motion, construed as a motion for

---

[4] Plaintiff may avail himself of remedies under the Maryland Tort Claims Act and through the Inmate Grievance Office.

[5] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post-deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker*'s reliance on *Parratt* in dismissing the plaintiff's due process claim.

7

summary judgment, shall be granted.   A separate Order follows.


Date:  July 26, 2011                                                    /s/
                                                            Catherine C. Blake
                                                            United States District Judge